# Hamilton *v.* People's National Bank, Appellant.

*Trusts and trustees—Guardian and ward—Embezzlement—Sale of bonds registered in ward's name—Failure of purchaser to make inquiry—Liability of purchaser to ward—Equity—Decree—Return of bonds—Accounting.*

Where a guardian sold to a bank certain corporate bonds registered in the name of his ward, such bonds providing that after registration no transfer thereof would be valid unless made on the books of the company, it was the duty of the officer of the bank with whom the guardian dealt to make inquiry as to the authority of the guardian to make the sale, although such officer did not know that he was dealing with a guardian, and where no such inquiry was made the bank was not in the position of a purchaser without notice, and a decree in equity to compel a surrender of such bonds to the ward and for an accounting, was proper.

Argued Oct. 3, 1917. Appeal, No. 123, Oct. T., 1917, by defendant, from decree of C. P. Washington Co., No. 2437, in Equity, directing surrender of bonds in case of Harry D. Hamilton, Guardian of the Estate of Clark N. Hathaway, a minor, v. Peoples National Bank of Washington. Before Brown, C. J., Mestrezat, Stewart, Frazer and Walling, JJ. Affirmed.

Bill in equity to compel surrender of bonds and for an accounting. Before Irwin, J.

From the record it appeared that Harry Russell Myers, Esq., a member of the Washington County bar, was appointed guardian of Clark W. Hathaway on February 26, 1906. Thereafter he purchased with his ward's funds three coupon bonds, containing a provision that title should pass by delivery unless registered on the books of the company, but that after registration no transfer except on the books of the company should be valid unless the last registration shall have been made to bearer. The bonds were duly registered in the name of

the ward, and such registration was evidenced by endorsement on the back of each bond.

On August 20, 1913, Myers obtained a loan from the defendant bank for his personal use and secured the same by the deposit of the bonds. At the time the loan was made and the bonds pledged as collateral security neither the bank nor its cashier with whom the guardian dealt, knew that Myers was guardian of Clark N. Hathaway, nor was any inquiry made of Myers as to how he came in possession of the bonds or by what authority he was pledging them as collateral security for his own indebtedness. A few days prior to August 14, 1915, Myers lifted the three bonds in question and substituted other securities.

On August 14, 1915, the said H. R. Myers was desirous of purchasing a certain mortgage on some coal property held by James A. Mounts, who was a depositor in the defendant bank, and he also desired to pay a note of Isaac W. Semans of $3,500, which the defendant bank held, and also his own note of $2,500. To accomplish this, on the forenoon of Saturday, August 14, 1915, he obtained a loan from the defendant bank of $8,900 and deposited as collateral security therefor ten bonds of the Pittsburgh-Westmoreland Coal Company. At the same time he sold to the defendant bank the three bonds of the Citizens' Water Company of $1,000 each, which he had pledged to the said bank as collateral for the said loan of $2,500, dated January 1, 1915. This $3,000 added to the $8,900 loan made $11,900. The said H. R. Myers then gave to the defendant bank his personal check on another bank for $251.50, bringing the total amount, including the loan of $8,900, the $3,000 for the bonds, and his personal check, to $12,151.50.

H. R. Myers had no checking account in the defendant bank and was not given credit on the books of the bank for the said sum of $12,151.50, but that amount was applied as follows: first, to the payment of his own note of $2,500; second, to the payment of the Isaac W. Se-

mans note of $3,500, then to the payment of the accrued interest on those two notes, amounting to $129.50, making a total of $6,129.50, leaving a balance of $6,022.

Subsequently on the afternoon of August 14th or the morning of August 16th, Myers instructed the cashier of the bank to place the $6,022 to the credit of James A. Mounts, and that was accordingly done.

During these negotiations the cashier of the bank knew that the proceeds of the bonds which Myers sold to the defendant bank were to go into a common fund with the proceeds of his loan of $8,900, and that the balance, after the payment of the Semans and Myers notes was to be applied to the purchase of a mortgage from Mounts. No inquiry was made by the cashier as to what authority Myers had for selling the bonds, nor was any inquiry made of him as to whom the mortgage was to be assigned which Myers was purchasing from Mounts.

The lower court filed the following conclusions of law:

2. These bonds being registered, and the bonds providing specifically that after registration no transfer thereof would be valid except on the books of the company, it was the duty of the cashier of the defendant bank to make inquiry as to the authority of the said H. R. Myers to make sale of said bonds.

3. The defendant bank is affected not only with notice of all such relevant facts as its cashier had knowledge of at the time of the purchase of these bonds, but of all relevant facts of which he would have obtained knowledge had he made proper inquiries as to the authority which Myers had to make sale of the bonds.

4. The said defendant bank is not an innocent purchaser, without notice, of said bonds, and is not entitled to retain possession of the same.

5. The plaintiff is entitled to a decree requiring the said defendant bank to turn over said two bonds Nos. 504 and 506, with their accompanying interest coupons, to the said plaintiff, and also to an accounting to the said plaintiff of all moneys which the said defendant bank

has collected on the interest coupons which were attached to said bond.

6. The defendant should pay the costs of this proceeding.

The lower court entered a decree in accordance with its conclusions of law.  Defendant appealed.

*Error assigned* was in dismissing exceptions to findings of fact and conclusions of law, and the decree of the court.

*Rufus S. Marriner,* of *Wiley & Marriner,* with him *James P. Eagleson,* for appellant.

*H. B. Hughes,* with him *Harry D. Hamilton* and *B. G. Hughes,* of *Hughes & Hughes,* for appellee.

PER CURIAM, October 19, 1917:

This appeal is dismissed and the decree affirmed, at appellant's costs, on the second, third, fourth, fifth and sixth legal conclusions of the learned chancellor below.